IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

YENG CHER KHANG,

                                      OPINION AND ORDER

                     Plaintiff,

                                        11-cv-261-bbc

       v.

MICHAEL ASTRUE,
Commissioner of Social Security,

                       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff Yeng Cher Khang, proceeding pro se, seeks reversal of the commissioner's decision that, because he is not disabled, he is not eligible for supplemental security income.

        Plaintiff contends that the administrative law judge erred in not finding his kidney stones a severe impairment and in failing to account for his deteriorating condition. After reviewing the record, I conclude that the administrative law judge did not err in either respect and that the commissioner's decision should be affirmed.

        The following facts are drawn from the administrative record (AR).

FACTS

A. Background

Plaintiff Yeng Cher Khang was born on May 7, 1956, AR 402. He fought with the Americans in Laos in the 1970s and came to this country in 1993. He has a high school education and can speak and write a little English. AR 21. He worked as a health care companion for six months in 2006, caring for his mother-in-law. AR 35.

On October 3, 2006, plaintiff filed an application for disability insurance benefits, alleging that he had been unable to work since January 1, 1994, because of kidney and bladder stones and war injuries. AR 134. After the local disability agency denied his application initially and upon reconsideration, he requested a hearing, which was held on June 17, 2009 before Administrative Law Judge Wendy Weber. The administrative law judge heard testimony from plaintiff, plaintiff's daughter, a neutral medical expert and a neutral vocational expert. On October 30, 2009, the administrative law judge issued her decision, finding plaintiff not disabled. This decision became the final decision of the commissioner on February 9, 2011, when the Appeals Council denied plaintiff's request for review.

B. Medical Evidence

Plaintiff has a history of kidney and bladder stones. He had various surgeries to remove the stones in 1994, 1996, 1998, 2001 and most recently in November 2005. AR 355-57, 362, 369-73. A computerized tomography (CT) scan of his kidneys in August 2006 revealed two appreciable stones in the right kidney and a number of smaller calcifications. By November 2006, the stones remained in place but were creating no blockages, while the smaller

2

calcifications had disappeared. AR 376.

Dr. Kou Yang became plaintiff's primary care physician in August 2006. AR 451-52. Plaintiff told Yang he had never been employed because of his recurrent kidney stones, but he reported no joint pain, stiffness or swelling; no back pain; and no muscle weakness. AR. 453. On examination, he had good range of motion in all his joints. Yang urged him to comply with his medications because his blood pressure was elevated. AR 454. Plaintiff's condition was largely unchanged at followup examinations in September and October 2006, although his blood pressure had improved. AR 445-49. In October, plaintiff reported that he had been working as a personal care worker for a home health agency, caring for his mother-in-law, but thought his fatigue might prevent him from continuing to do this. Yang suspected that plaintiff's diabetes contributed to the fatigue, because plaintiff had not been checking his blood sugar. AR. 445.

In November 2006, Dr. Yang referred plaintiff for a refresher course on diabetic dietary counseling and adjusted his blood pressure medication. AR 438, 440. Yang also concluded that plaintiff had no kidney disease at that point. AR 438. Physical examinations continued to reveal no joint pain or muscle weakness. AR. 439. In December 2006, plaintiff complained to Yang of knee pain. Yang examined plaintiff's knees but noted no redness or swelling and no obvious tenderness. AR 432. X-rays showed that the bone, joint and soft tissue structures of plaintiff's knees were normal. AR 427, 461.

In January 2007, plaintiff saw Dr. Yang, complaining of numbness and weakness in his left arm and right leg. AR 417-18. He told Yang that he was worried about being able to care for his young children, whom he watched while his wife was at work, and asked Yang to write

a work excuse so the Wisconsin Job Center would not coerce him into looking for a job. AR 417. After a physical examination, Yang informed plaintiff he could not find any objective basis for his complaints and therefore could not write a work excuse or give him a disability rating.  AR 417.  He referred plaintiff to Dr. Verica Neskovic, a neurologist.  Id.

Plaintiff saw Dr. Neskovic on January 17, 2007, for an assessment of his pain and weakness.  He brought along an interpreter.  On examination, Neskovic found that plaintiff's back was not tender and his peripheral pulses were intact.  AR 413.  Physical and neurological examinations were normal.  AR 414.  A motor examination revealed normal muscle tone and bulk, but plaintiff displayed what Neskovic referred to as "give-way weakness" on his entire left upper extremity and right lower extremity.  She concluded that plaintiff did not give enough effort and his weakness appeared functional, with varying amounts of voluntary effort. Otherwise his strength was normal.  Neskovic observed that plaintiff was limping but that he could walk normally on his heels and toes.  AR 415.  Neskovic ordered nerve conduction studies.

At a followup visit on January 24, 2007, Neskovic went over the studies, which suggested mild nerve entrapment in plaintiff's left wrist and some abnormalities of uncertain clinical significance on the right.  Her diagnosis was left carpal tunnel syndrome.  AR 411-12, 493-96. She ordered a spinal magnetic resonance imaging (MRI) scan to rule out structural abnormalities, AR 412.  The MRI revealed a mild herniation and disc space narrowing in plaintiff's lower back.  AR 458.

Also in January 2007, plaintiff saw Dr. Perico Arcedo, a specialist in physical medicine and rehabilitation.  Arcedo's examination revealed numbness in plaintiff's left arm, pain in his right ankle and an abnormal gait.  AR 409.  An x-rays of his right ankle was unremarkable.  Id.

4

Arcedo referred plaintiff for physical therapy to address his antalgic gait and knee pain. AR 490-92.

When plaintiff returned to Dr. Neskovic in August 2008, she observed that his gait had changed and that he was swaying from side to side rather than limping on the right. She noted that the objective tests did not explain his symptoms. AR 408.

In March 2007, plaintiff's physical therapist noted that his symptoms and peculiar gait pattern were unexplainable. She encouraged him to walk without a cane and in a more normal fashion. AR 468.

Plaintiff also attended occupational therapy until March 2007, when he was discharged from occupational therapy because he was able to grasp things safely and effectively. The occupational therapist concluded that he had the functional strength and range of motion to perform most activities at home in a seated position. AR 467.

On March 28, 2007, Dr. Arcedo wrote a letter stating that plaintiff had a gait impairment resulting from his low back condition and weakness in his left hand caused by carpal tunnel syndrome. The letter added that for these reasons, plaintiff could not properly care for his children while his wife was at work and required daycare assistance. AR 497.

Dr. George Lar provided chiropractic treatment to plaintiff for his back pain from December 2008 through August 2009. AR 517-77. Lar's treatment records showed that plaintiff's condition generally improved with treatment. By August 11, 2009, plaintiff reported no pain. AR 517.

On July 2, 2009, plaintiff saw Dr. Luke Budleski for a physiatric evaluation. He reported that his lower back ached and his left leg felt heavy and numb. He said that his back pain

ranged from 5/10 to 8/10, and was aggravated by sitting, standing, bending forward or holding any position for too long.  AR 511.  He added that he had used a walker during the previous year because he was afraid of falling.  AR 512.  On examination, plaintiff walked with a mild limp, although he said he was afraid of walking without a walker.  He had normal posture and mild tenderness in his lower back.  A straight-leg test was negative but the examination revealed signs of arthritis in the hip.  Plaintiff had normal muscle tone, normal balance and coordination, full muscle strength on the right and reduced strength on the left, although he demonstrated increased strength with encouragement.  Dr. Budleski concluded that plaintiff had degenerative disc disease in his back but the extent of any muscle weakness was hard to assess because plaintiff had made a poor effort on manual muscle testing.  AR 513.  Budleski recommended physical therapy and home exercise.  AR 514.

On July 9, 2009, plaintiff saw Dr. Henry Cole, an orthopedic surgeon, for an evaluation of his shoulder pain.  AR 588-89.  Cole determined that plaintiff's left shoulder joint was enlarged.  A physical examination revealed no neurological deficits or circulation problems; 4/5 muscle strength compared to plaintiff's right shoulder; and some signs of impingement, although plaintiff retained the ability to move his shoulder and hold his arm at 90 degrees.  AR 589.  Cole gave plaintiff a series of steroid injections, which helped his shoulder pain.  AR 581-82, 588.

## C.  Consulting Physicians

On December 26, 2006, state agency physician Mina Khorshidi completed a physical residual functional capacity assessment for plaintiff, listing diagnoses of diabetes, fatigue and dizziness.  AR 389.  Khorshidi found that plaintiff could lift 50 pounds occasionally and 25

pounds frequently, stand or walk six  hours in an eight-hour workday and sit six hours in an eight-hour work day with no concentrated exposure to hazards.  AR 390-93.

On May 14, 2007, state agency physician Michael Baumblatt completed a physical residual functional capacity assessment for plaintiff, listing diagnoses of back disorder and diabetes.  AR 502.  Baumblatt found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour work day with frequent climbing, balancing, kneeling and crawling, occasional stooping and crouching and no concentrated exposure to hazards.  AR 503-06.

## D.  Hearing Testimony

At the administrative hearing, plaintiff testified that he came to the United States in 1993 and had become a United States citizen.  He can speak and read a little English and obtained his HSED at Mid-State in Wisconsin Rapids.  AR 19-21.

Plaintiff testified that he could not work because of pain in his back and arm.  He walked with a walker at the hearing but could walk slowly without it.  AR 24.   Plaintiff's daughter testified that her father was not able to use his left arm and his leg is numb and that she cared for him because he could not dress himself or cook.  AR 26-27.

The administrative law judge called a neutral medical expert, Sami Nafoosi, M.D., to testify. Dr. Nafoosi had heard plaintiff's testimony and reviewed the evidence in the record.  AR 29.  It was his opinion that plaintiff had diabetes and hypertension with no evidence of end organ damage, disorder of the spine and carpal tunnel syndrome on the left documented by objective tests, with an onset date of September 2006.  AR 31-32.  Nafoosi testified that

although plaintiff had a history of kidney and bladder stones, his kidney function remained normal, AR 32, and he could perform work requiring lifting 50 pounds occasionally and 25 pounds frequently, sit for eight hours in an eight-hour work day and stand six hours in an eight-hour work day so long as he was allowed to change positions briefly for one to three minutes every hour and he could essentially balance, stoop, kneel, crouch, crawl, climb and bending and but could not do power gripping or use vibrating tools with his left hand.  AR 33.

Finally, the administrative law judge called Allan Boroskin to testify as a neutral vocational expert.  AR 35.  Boroskin asked plaintiff whether he had worked as a health care companion in 2006; plaintiff said he had taken care of his mother-in-law for wages.  AR 35. Boroskin testified that according to the Dictionary of Occupational Titles, the work of a health care companion was semi-skilled light work (DOT #309.677-010).   In response to a question from the administrative law judge, Boroskin testified that this job could be performed by an individual with plaintiff's characteristics and the residual functional capacity to perform limited light work. He added that his testimony was consistent with the Dictionary of Occupational Titles.  AR 37.


E. Administrative Law Judge's Decision

In reaching her conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  20 C.F.R. §§ 404.1520, 416.920.  At step one, she found that plaintiff had not engaged in substantial gainful activity since October 3, 2006, his application date.  (This finding is hard to reconcile with her statement at page three of her decision, AR 46, that plaintiff "had worked for six months after the alleged disability

onset date and this work rose to the level of substantial gainful activity," but because it is favorable to plaintiff I will assume that her step one finding is correct.)  At step two, she found that plaintiff had severe impairments of disorder of the lumbar spine and carpel tunnel syndrome on the left.  Taking into consideration the testimony of the medical expert, the administrative law judge found that plaintiff's kidney stones had not impaired his ability to work since the application date of October 2006.  AR 46.  Therefore, she found that the kidney condition was not a severe impairment.  AR 46, 49.

At step three, the administrative law judge found from the longitudinal record and the testimony of the medical expert that plaintiff did not have an impairment that met or medically equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 46.  She found that plaintiff retained the residual functional capacity to perform light work so long as he was allowed to change positions briefly for one to three minutes every hour with occasional balancing, stooping, kneeling, crouching, crawling and bending and that he could not do power gripping or use vibrating tools with his left hand.  AR 46.

In determining this residual functional capacity, the administrative law judge assessed plaintiff's credibility according to the requirements of 20 C.F.R. 404.1529 and 416.929 and Social Security Rulings 96-4p and 96-7p.  After considering the medical evidence, including plaintiff's history of kidney stones and the testimony of the medical expert, the administrative law judge concluded that plaintiff's testimony that he was not able to work was not credible to the extent it was inconsistent with his residual functional capacity.  AR 50.  In determining that residual functional capacity, the administrative law judge weighed the opinions of the various medical sources.  She considered the 2006 and 2007 opinions of the state agency physicians and

gave more weight to the more limited restrictions of the 2007 opinion because of evidence received from plaintiff's treating physician after the first opinion and the persistence and severity of plaintiff's pain and other symptoms.  AR 49-50.  She also gave "great probative weight" to the testimony of the medical expert.  AR 49.

At step four, the administrative law judge found that plaintiff was able to perform his past relevant work as a home health companion as actually and generally performed.  In reaching this conclusion, she relied on the testimony of the vocational expert that a hypothetical individual with plaintiff's characteristics could perform this job.  AR 50-51.  She found that the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles.  AR 25.  She concluded that plaintiff was not disabled because he could perform his past relevant work.  AR 51.

OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U .S. 389, 401 (1971). The decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002). When the administrative law judge denies benefits, she must build a logical and accurate bridge from the evidence to his conclusion.

10

Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).


### B.  Severe Impairment

Plaintiff's first objection to the administrative law judge's decision is that she erred in not finding that his history of kidney and bladder stones was a severe impairment.  It was plaintiff's burden to show that this condition affected his ability to perform basic work activities from the date of his application, October 3, 2006, for a twelve-month period.  20 C.F.R. § 416.909.  The only evidence that he has kidney and bladder stones are records from 1994, 1996, 1998, 2001 and 2005, so he cannot make the necessary showing of an impairment.  Further, the medical expert testified that the medical evidence showed that plaintiff has had normal kidney function since 2006.  The administrative law judge did not err in finding that plaintiff's kidney and bladder stones were not a severe impairment in the relevant period.


### C.  Deterioration of Condition

Plaintiff contends that his back and shoulder conditions deteriorated greatly in 2011 and he submitted a May 11, 2011 letter from Dr. Laurence R. Gordon, saying that because of plaintiff's gait impairment and left shoulder difficulties he can not provide day care for his children.   The problem is that this deterioration occurred well over a year after the administrative law judge's decision and months after the appeals council's decision.  It does not relate to the period that the administrative law judge was considering so it could have no bearing on her decision.  Anderson v. Bowen, 868 F. 2d 921, 927 (7th Cir. 1989) (evidence must be material to relevant time period).  Although this evidence sheds no light on plaintiff's physical

condition between October 2006 and October 30, 2009, the date of the administrative law judge's decision, plaintiff may use it to support a new application for benefits.

### D.  Performance of Past Work

One final matter requires comment.  At step four, the administrative law judge found that plaintiff could perform his past work as actually performed and as generally performed.  At the hearing, the vocational expert testified that a hypothetical individual with plaintiff's characteristics and residual functional capacity could perform the work of health care companion as described in the Dictionary.  This is substantial evidence that plaintiff could perform the job as generally performed.  Sims v. Barnhart, 309 F.3d 424, 432 (7th Cir. 2002) (vocational expert testimony may constitute substantial evidence).  The record contains no evidence supporting the administrative law judge's conclusion that plaintiff could perform his past work as he *actually* performed it but this is a harmless error.  At step four the administrative law judge need only determine whether plaintiff could have performed his past work as he actually performed it **or** as it is generally performed.  Smith v. Barnhart, 388 F.3d 251, 253 (7th Cir. 2004).

### E. Conclusion

In conclusion, the administrative law judge set forth her path of reasoning in her decision and properly created a logical bridge from the evidence to her conclusions.  Denton v. Astrue, 596 F. 3d 419, 425 (7th Cir. 2010).  Therefore the commissioner's decision that plaintiff was not disabled during the relevant period will be affirmed.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of

Social Security, is AFFIRMED and plaintiff Yeng Cher Khang's appeal is DISMISSED.  The

clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 20th day of February, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge